DAVID A. THOMAS (Bar No. 215367)
David.Thomas@BlankRome.com
NICOLE B. METRAL (Bar No. 286606)
Nicole.Metral@BlankRome.com
ERICA R. GRAVES (Bar No. 301785)
Erica.Graves@BlankRome.com
ALLEN HO (Bar No. 318187)
Allen.Ho@BlankRome.com
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Plaintiff and Counter-Defendant
The Santa Barbara Smokehouse, Inc.
and Plaintiff DHBrands Limited

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SANTA BARBARA SMOKEHOUSE, INC., a California corporation, and DHBRANDS LIMITED, a Cyprus limited liability company,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>AQUACHILE, INC., a Florida corporation, AGROSUPER S.A., a Chile corporation, and EMPRESAS AQUACHILE S.A., a Chile corporation,<br><br>                    Defendants. | Case No. 2:19-cv-10733-RSWL-(JEMx)<br><br>**PLAINTIFFS' APPLICATION FOR LEAVE TO FILE UNDER SEAL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT PURSUANT TO L.R. 79-5.2.2(a)**<br><br>[Filed concurrently with Declaration of Timothy R. Brown and [Proposed] Order]<br><br>Fact Discovery Cutoff:  Dec. 10, 2021<br>Pretrial Conference:    Mar. 22, 2022<br>Trial:                          Apr. 12, 2022 |

AQUACHILE, INC., a Florida corporation,

Counter-Plaintiff,

vs.

THE SANTA BARBARA SMOKEHOUSE, INC., a California corporation,

Counter-Defendant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In support of their Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment (the "Opposition"), Plaintiff and Counter-Defendant THE SANTA BARBARA SMOKEHOUSE, INC. (the "Smokehouse") and Plaintiff DHBRANDS LIMITED ("DHBrands") (together, "Plaintiffs") seek leave to file under seal certain exhibits submitted in support of their Opposition, as well as testimony and sections from the pleadings referencing or discussing those same exhibits (the "Materials").

This application is made on the grounds that good cause and compelling reasons exist to keep the Materials under seal because they either contain or implicate Plaintiffs' confidential and proprietary information, and constitute private trade secrets that would harm Plaintiffs' competitive standing if disclosed to the public, which would necessarily include competitors of Plaintiffs.  The documents and facts at issue here were also provided to Defendants by Plaintiffs subject to the parties' Stipulated Protective Order (the "Protective Order") (Dkt. No. 60), attached hereto as **Exhibit A,** and were designated as confidential by Plaintiffs accordingly.

This application is based on this notice, the attached Memorandum of Points and Authorities, the attached Declarations of David A. Thomas and Timothy R. Brown, the exhibits hereto, and any such other arguments and evidence as may be presented at the time of hearing, if any.

DATED: February 1, 2022          BLANK ROME LLP


By:  */s/ David A. Thomas*
          David A. Thomas
          Nicole B. Metral
          Erica R. Graves
          Allen Ho

Attorneys for Plaintiff and Counter-Defendant
The Santa Barbara Smokehouse Inc. and
Plaintiff DHBrands Limited

1

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

Plaintiffs hereby submit their Application For Leave to File Under Seal ("Application") exhibits (the "Materials") in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Opposition") and portions of the Opposition pleadings and testimony referencing those Materials.  This Application is made pursuant to Local Rule 79-5.2.2(a) to file documents not designated as confidential by another pursuant to a protective order under seal in a non-sealed civil case.  A Filing Party seeking leave to file documents under seal under Local Rule 79-5.2.2(a) must "describe the nature of the information that the Filing Party asserts should be closed to public inspection, and [the application] must be accompanied by … [a] declaration (1) establishing good cause or demonstrating compelling reasons why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard, and (2) informing the Court whether anyone opposes the Application."

In this instance, Plaintiffs seeks leave to file under seal documents designated as confidential under the Protective Order by *Plaintiffs themselves* (as well as portions of the Opposition pleadings and supporting declarations that reference, discuss, or quote those documents).  Good cause and compelling reasons exist to seal the Materials because they implicate Plaintiffs' sensitive, proprietary trade secret information, as well as private business and financial records, information, and communications regarding confidential business practices, customer and vendor information, pricing, research or development, private information, and other information generally unavailable to the public or which are privileged or otherwise protected from disclosure.  Exposure of that private and confidential information to the public record will cause irreparable and lasting harm to Plaintiffs' competitive standing by exposing critical business information and strategies to Plaintiffs' competitors in their well-

connected and insular industry community, as well as negatively impact Plaintiffs' ability to facilitate a future sale of their business.

The parties met and conferred via email on January 26 and 28, 2022 concerning the substance of this Application, and discussed and agreed that the Materials identified below are confidential in accordance with the parties' Stipulated Protective Order, and should be filed under seal. Declaration of David A. Thomas in support of Application ("Thomas Dec."), ¶ 3; *see also* **Ex. A** at §§ 1.C, 5.5, 6.2, 6.3, 11.3. Defendants have indicated they will not oppose this Application. Thomas Dec., ¶ 3.

## II.   LEGAL STANDARD.

Courts may seal documents that "might [] become a vehicle for improper purposes." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978). The presumption favoring disclosure of court records can be overcome if litigants show an overriding interest and that sealing is "narrowly tailored to serve that interest." *Press-Enter. Co. v. Sup. Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 9-10 (1986). The common law right to access judicial records "is not absolute and can be overridden" when the parties demonstrate compelling reasons. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

With regards to the sealing of dispositive motions and attachments thereto, the Ninth Circuit has set forth the "compelling reasons" standard, which requires a party seeking leave to seal to "articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz*, 331 F.3d at 1135) (internal citations and quotations omitted). "Under the compelling reasons standard, a district court must weigh relevant favors, base its decision on a compelling reason, and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665,

679 (9th Cir. 2010) (internal quotations omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify public spite, promote public scandal, circulate libelous statements, *or release trade secrets*."  *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)) (emphasis added).

Courts routinely seal documents that contain commercially sensitive information that risks harming a party's competitive standing.  *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 822 n.1 (9th Cir. 2011); *see also Nixon*, 435 U.S. at 598 (courts are authorized to seal "business information that might harm a litigant's competitive standing"); *United States ex rel. Ruhe v. Masimo Corp.*, No. CV 10-08169, 2013 WL 12131173, at *2 (C.D. Cal. Aug. 26, 2013) (documents sealed because "they contain trade secret and business information a competitor could use to harm [defendant's] competitive standing" including "internal research studies and clinical tests," "non-public data and specifications," "and non-public records" that were shown to be "confidential, proprietary, and competitively valuable").  Courts have found that a party has demonstrated compelling reasons warranting sealing where "confidential business materials, marketing strategies, product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."  *Algarin v. Maybelline, LLC*, No. 12CV3000, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014).

Moreover, the unopposed submission of documents for sealing pursuant to an existing protective order may also constitute sufficient rationale for the Court to grant leave to file documents under seal.  *See Ortega v. San Diego Police Dept.*, No. 13-cv-87, 2014 WL 12675248, at *2 (S.D. Cal. June 26, 2014); *In re Adobe Sys., Inc. Sec.*

4

*Litig.*, 141 F.R.D. 155, 161-62 (N.D. Cal. 1992) ("Protective orders and filings under seal are the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated.").

### III.   COMPELLING REASONS EXIST TO FILE THE MATERIALS UNDER SEAL

The Materials[1] Defendants have identified as being subject to a request for sealing in connection with Plaintiffs' Opposition pursuant to Local Rule 79-5.2.2(a) consist of:

1.      **Exhibit B[2]** –Plaintiffs' Memorandum of Points and Authorities in support of their Opposition, with sections identified for redaction highlighted in green;

2.      **Exhibit C** – Plaintiffs' Statement of Genuine Disputes in support of their Opposition, with sections identified for redaction highlighted in green;

3.      **Exhibit D** – Excerpts from the transcript of Volume I of the deposition of Defendants' principal Sady Delgado, taken in this action on December 9, 2021, with sections identified for redaction highlighted in green (attached as **Exhibit 58** to the Declaration of David A. Thomas in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Thomas MSJ Dec."));

---

[1] The Materials include: (i) document exhibits submitted for sealing (both partial redactions and full redactions); (ii) excerpts from the supporting declarations to the Opposition; and (iii) excerpts from the Opposition memorandum of points and authorities and supporting Statement of Genuine Disputes.

[2] All Exhibit references with letters (as opposed to numbers) are in reference to Exhibits attached to the concurrently filed under seal Declaration of Timothy R. Brown in support of the instant Application.

4.      **Exhibit E** – Excerpts from the transcript of Volume I of the deposition of Plaintiffs' deal broker and non-retained expert witness Jeremy Roberts, taken in this action on January 6, 2022, with sections identified for redaction highlighted in green (attached as **Exhibit 67** to the Thomas MSJ Dec.);

5.      **Exhibit F** – Declaration of Jeremy Roberts in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Roberts MSJ Dec."), with sections identified for redaction highlighted in green;

6.      **Exhibit G** – Nondisclosure agreement entered into between Plaintiffs and potential acquiror Labeyrie in relation to the proposed sale of Plaintiffs, with sections identified for redaction highlighted in green (attached as **Exhibit 2** to the Roberts MSJ Dec.);

7.      **Exhibit H** – May 30, 2019 Information Memorandum sent to Labeyrie by Plaintiffs in relation to the proposed sale (attached as **Exhibit 3** to the Roberts MSJ Dec.);

8.      **Exhibit I** – June 14, 2019 Letter of Intent from Labeyrie to Plaintiffs in relation to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 4** to the Roberts MSJ Dec.);

9.      **Exhibit J** – June 18, 2019 letter from Plaintiffs' broker to Labeyrie relating to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 5** to the Roberts MSJ Dec.);

10.     **Exhibit K** – July 19, 2019 letter from Labeyrie to Plaintiffs in relation to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 6** to the Roberts MSJ Dec.);

11.     **Exhibit L** – August 1, 2019 email correspondence between Plaintiffs' broker and Labeyrie relating to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 7** to the Roberts MSJ Dec.);

12.    **Exhibit M** – September 18, 2019 email correspondence between Plaintiffs' broker and Labeyrie relating to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 8** to the Roberts MSJ Dec.);

13.    **Exhibit N** – September 18 through 20, 2019 email correspondence between Plaintiffs' broker and Labeyrie relating to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 9** to the Roberts MSJ Dec.);

14.    **Exhibit O** – September 20, 2019 email correspondence between Plaintiffs' broker and Labeyrie relating to the proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 10** to the Roberts MSJ Dec.);

15.    **Exhibit P** – Certain confidential floor plans (attached as **Exhibit 11** to the Roberts MSJ Dec.);

16.    **Exhibit Q** – Slide deck from September 2019 working session between Plaintiffs and Labeyrie relating to proposed sale (attached as **Exhibit 12** to the Roberts MSJ Dec.);

17.    **Exhibit R** – September 2019 Labeyrie market research survey brief relating to proposed sale (attached as **Exhibit 13** to the Roberts MSJ Dec.);

18.    **Exhibit S** – Plaintiffs' financial statement pertaining to calendar year 2019 relating to proposed sale (attached as **Exhibit 14** to the Roberts MSJ Dec.);

19.    **Exhibit T** – October 11, 2019 email correspondence between Plaintiffs' broker and Labeyrie relating to proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 15** to the Roberts MSJ Dec.);

20.    **Exhibit U** – November 22, 2019 email correspondence between Plaintiffs' broker and BP relating to proposed sale, with sections identified for redaction highlighted in green (attached as **Exhibit 16** to the Roberts MSJ Dec.);

21.    **Exhibit V** – Declaration of Wayne Slavitt in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary

7

Judgment ("Slavitt MSJ Dec."), with sections identified for redaction highlighted in green;

22.   **Exhibit W** – Plaintiffs' Expert Report prepared by Wayne Slavitt, (attached as **Exhibit 1** to the Slavitt MSJ Dec.);

23.   **Exhibit X** – Declaration of Christopher Hamilton in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Hamilton MSJ Dec."), with sections identified for redaction highlighted in green;

24.   **Exhibit Y** – Plaintiffs' Expert Report prepared by Christopher Hamilton, (attached as **Exhibit 1** to the Hamilton MSJ Dec.);

25.   **Exhibit Z** – Declaration of Timothy Brown in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Brown MSJ Dec."), with sections identified for redaction highlighted in green;

26.   **Exhibit AA** – Declaration of Luis Pelayo in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Pelayo MSJ Dec."), with sections identified for redaction highlighted in green; and

27.   **Exhibit BB** – Declaration of Theofanis Argyrou in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and/or Partial Summary Judgment ("Argyrou MSJ Dec."), with sections identified for redaction highlighted in green.

These Materials were produced or arose throughout the course of discovery in this action and are subject to the Protective Order, or directly reference and discuss such Materials or the information underlying such materials.  Thomas Dec., ¶ 4.  To the extent possible, Plaintiffs have identified only partial redactions to the documents submitted for seal in green highlighting, though certain other documents are submitted

in whole for sealing because the entirety of their contents implicate information sought to be kept confidential by Plaintiffs.

**A.    Compelling Reasons Exist To Seal Materials Related to Plaintiffs' Expert Damages Analysis.**

**Exhibits X and Y** should be sealed because they make direct reference to Plaintiffs' expert damages analysis conducted by Plaintiffs' retained expert Chris Hamilton, which is itself predicated on private business and financial information concerning potential transactions between Plaintiffs and third parties regarding the purchase of Plaintiffs' businesses, public exposure of which would impact the Smokehouse's ability to compete within its industry.  Declaration of Timothy Brown ("Brown Dec."), ¶ 3; *see* **Exhibit A**.  The aforementioned confidential information relating to the contemplated transactions should remain private and inaccessible to the public (which necessarily includes the Smokehouse's competitors) because it includes Plaintiffs' trade secrets, as well as Plaintiffs' private business and financial records, information, communications, practices, customer and vendor information, pricing, research, and development that were provided to third parties to facilitate the transactions.  Brown Dec., ¶ 3; *see Algarin*, 2014 WL 690410, at *3 (compelling reasons demonstrated where "confidential business materials, marketing strategies, product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies").

Public dissemination of this information would harm the Smokehouse's competitive standing by exposing, *inter alia*, information regarding Plaintiffs' vendors, customers, pricing, strategies, and processes to its competitors.  Brown Dec., ¶ 4.  This would include giving the Smokehouse's customers and suppliers information about the Smokehouse's financial position, as well as its sales to and/or purchases from other customers and/or suppliers, that they could use to take advantage

9

of the Smokehouse in future negotiations.  *Id.*  The details provided to the potential acquirors included plans for the Smokehouse's future growth, and exposure of such information to Plaintiffs' competitors could result in improper use through those competitors' adoption of those contemplated practices and strategies without investing the time, resources, and personal capital to develop such strategies on their own.  *Id.*  The potential for and degree of harm from such exposure are magnified by the fact that the Smokehouse's industry is highly specialized and insular, thus amplifying the negative effects of any damage to the Smokehouse's ability to compete.  *Id.*  Disclosing such information also could adversely impact Plaintiffs' ability to attempt a sale of their businesses on favorable terms in the future.  *Id.*

**B.      Compelling Reasons Exist To Seal Materials Relating To Plaintiffs' Prospective Sale To Third Parties.**

That same aforementioned sensitive and confidential business information is also implicated in the communications between Plaintiffs, their deal broker (who facilitated the transactions), and third parties—as well as the associated documents and information related to those transactions—that must remain confidential in order for the Smokehouse to maintain its competitive advantage in its industry.  **Exhibits F-U, Z-BB**; Brown Dec., ¶¶ 5-6.  It is similarly implicated in the expert report by Plaintiffs' retained mergers and acquisitions expert Wayne Slavitt, who discusses and analyzes that information in detail in his report appended to his declaration (**Exhibits V and W**).  For the same reasons articulated in the preceding paragraphs, these communications and associated documents should also be sealed, because exposure of the confidential business practices, strategies, financial information, vendors, pricing, and trade secrets contemplated therein would cause irreparable harm to Plaintiffs' competitive standing, and allow their competitors in a small, close-knit industry significant negotiation advantages that they could not otherwise legally obtain.  Brown Dec., ¶¶ 3-6.  The information in these communications was curated specifically for

10

the purposes of the contemplated acquisition of Plaintiffs' by third parties, and provided as part of a confidential transaction process subject to written non-disclosure agreements. *Id.* at ¶¶ 5-6.

Public disclosure of the communications and associated documents will expose Plaintiffs' confidential and proprietary information, including private trade secrets, and harm Plaintiffs' competitive standing by exposing information their competitors can take advantage of in future negotiations, as well as in any future sale of the businesses. Brown Dec., ¶ 7. The documents contain Plaintiffs' private business practices and strategies, which were developed by Plaintiffs through significant expenditure of time, expertise, money, and personal capital. *Id.* The private business information and trade secrets implicated therein are entirely personal to Plaintiffs' experience, and public disclosure would allow their competitors access to beneficial information that they could not otherwise legally obtain, to the detriment of Plaintiffs and to the benefit of their competitors. *Id.*

## C.     Compelling Reasons Exist To Seal Materials Relating To Plaintiffs' Dealings With Its Other Vendors.

Plaintiffs further seek the sealing of documents detailing its transactions with its suppliers other than Defendants (**Exhibits Z and AA**), the contents of which include confidential financial and pricing information which are not generally available to the public. Brown Dec., ¶ 8. Public disclosure of this information would harm Plaintiffs' ability to do business in the future if its competitors are able to access such pricing information for other vendors and utilize that information in negotiations with the Smokehouse. *Id.* at ¶¶ 3-4, 8. Plaintiffs' vendor relationships and financial arrangements are the result of carefully curated relationships painstakingly built by its personnel through significant expenditure of time and resources, and are a business advantage that constitute Plaintiffs' trade secrets and confidential information. *Id.* at ¶ 8.

**D.** **Compelling Reasons Exist To Seal the Opposition Pleadings and Exhibits Referencing or Implicating the Aforementioned Materials.**

Likewise, the Opposition pleadings, supporting declarations, and witness deposition transcript excerpts attached thereto also either directly implicate, discuss, or identify the Plaintiffs' confidential trade secrets, business and financial information, customer and vendor information, pricing, strategies, and research described in the preceding Sections III.A-C, *supra*, or reveal the specific details of the contemplated business transactions between Plaintiffs and third parties.  Brown Dec., ¶¶ 3-4, 9; *see* **Exhibits B-F**, **Z-BB**.   To that end, portions of the Opposition memorandum of points and authorities and Statement of Disputed Fact referencing, discussing, or quoting the aforementioned Materials submitted for sealing have been identified for redaction and highlighted in green for the Court's reference.  *See* **Exhibits B and C**.

The witness deposition transcript excerpts for sealing include portions of the deposition transcript of Jeremy Roberts (Plaintiffs' non-retained expert witness) and Sady Delgado (Defendants' principal and percipient witness).  Brown Dec., ¶ 9; **Exhibit D and E**.  Mr. Roberts' deposition testimony implicates confidential details of the contemplated transaction and negotiations between Plaintiffs and potential-acquirors Labeyrie and BP, which should be kept under seal because public exposure of that information would harm Plaintiffs' competitive standing by allowing its competitors access to otherwise confidential and proprietary information within a highly specialized and connected industry community.  Brown Dec., ¶¶ 3-4, 10; **Exhibit E**.

Plaintiffs also seek leave to file excerpts from the deposition transcript of Sady Delgado under seal, because those portions of the transcript discuss the same confidential settlement documents related to the prior lawsuit between the Smokehouse and Agrosuper's subsidiary Agro America LLC which were entered into with the understanding that they would remain confidential, and for that reason those

portions of the deposition transcript should be sealed.  **Exhibit D**; *See San Diego Comic Convention v. Dan Farr Productions*, No. 14-cv-1865, 2018 WL 2717880, at *1 (S.D. Cal. June 5, 2018) (granting request to seal exhibit where supporting declaration identified how "the motion is replete with references to confidential settlement discussions [and] negotiations," and that "[i]t is without question that courts have sealed confidential settlement agreements and negotiations"); *Prosurance Grp., Inc. v. Liberty Mutual Grp., Inc.*, No. 10-cv-02600, 2011 WL 704456, at *1 (N.D. Cal. Feb. 18, 2011) (sealing documents discussing or disclosing terms of confidential settlement agreement); *Brightwell v. McMillan Law Firm*, No. 16-cv-1696, 2017 WL 5885667, at *1-2 (S.D. Cal. Nov. 29, 2017) (sealing email correspondence discussing terms of confidential settlement agreement).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Application for leave to file the Materials under seal.

DATED: February 1, 2022           BLANK ROME LLP


By:  */s/ David A. Thomas*
     David A. Thomas
     Nicole B. Metral
     Erica R. Graves
     Allen Ho

Attorneys for Plaintiff and Counter-Defendant
The Santa Barbara Smokehouse Inc. and
Plaintiff DHBrands Limited

13

## DECLARATION OF DAVID A. THOMAS

I, DAVID A. THOMAS, hereby declare and state as follows:

1.     I am an attorney licensed to practice law in the State of California, employed with the law firm of Blank Rome LLP, and one of the attorneys of record for Plaintiff and Counter-Defendant The Santa Barbara Smokehouse, Inc. and Plaintiff DHBrands Limited (together, "Plaintiffs") in this action.  I am lead trial counsel for Plaintiffs in this action.  I make this declaration based on personal knowledge and, if called upon to do so, I could and would testify competently thereto.

2.     This declaration is made in support of Plaintiffs' Application For Leave to File Under Seal ("Application") in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Opposition").

3.     I spoke with Michael R. Weiss, counsel for Defendant and Cross-Plaintiff AquaChile, Inc. and Defendants Empresas AquaChile S.A. and AgroSuper S.A. (together "Defendants"), on or about January 27, 2022 concerning certain sealing matters, during which time I mentioned, *inter alia*, that Plaintiffs would be moving under L.R. 79-5.2.2(a) to seal certain materials in connection with their opposition papers.  Mr. Weiss indicated that Defendants would not oppose the application to seal for purposes of the pending Motion for Summary Judgment, with the proviso that Defendants' position was without prejudice to challenging sealing of such materials (the "Materials") at a later time, to which I agreed.

4.     Throughout the course of discovery in this action, Plaintiffs and Defendants produced documents and information subject to the parties' Stipulated Protective Order ("Protective Order").  Dkt. No. 60.  The request for relief set forth in the Motion implicates documents produced by Plaintiffs and designated as confidential pursuant to the Protective Order.  Plaintiffs have sought to, and continue to seek, to protect and keep confidential that Material.

/ / /

14

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on February 1, 2022.

4

5                                                        */s/ David A. Thomas*

6                                                                David A. Thomas

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' APPLICATION FOR LEAVE TO FILE UNDER SEAL IN SUPPORT OF OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT PURSUANT TO L.R. 79-5.2.2(a)**